MORRILL v. HARDWARE JOBBERS' PURCHASING CO. et al.

(Circuit Court of Appeals, Second Circuit. December 6, 1905.)

No. 59.

1. PATENTS—INFRINGEMENT—EVIDENCE TO ESTABLISH.

The offer by a defendant of an application for a patent, which shows a device infringing a prior patent with a statement that defendant is manufacturing thereunder is insufficient to prove infringement of the prior patent, where such device is absent from the machine actually made by defendant, and introduced in evidence.

2. SAME—SAW-SETS.

The Morrill patents, Nos. 441,962, 532,175, and 703,440, each covering a saw-set *held* not infringed as limited by the prior art.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 131 Fed. 882.

The decree of the United States Circuit Court for the Southern District of New York dismissed a bill alleging infringement of complainant's patents, Nos. 441,962, 532,175, and 703,440, granted to Charles Morrill for improvements in saw-sets.

A. Bell Malcomson, for appellant.
Alfred Wilkinson, for appellees.

Before LACOMBE, TOWNSEND, and COXE, Circuit Judges.

TOWNSEND, Circuit Judge. We concur in the conclusion reached by the court below as to claim 1 of patent No. 441,962, for the reasons stated by the court in its opinion. The offer by defendant of a copy of an application for a patent, with a statement that the defendant is manufacturing thereunder, is insufficient alone to prove infringement. It merely serves to show that the defendant claims to manufacture its devices under the protection of said application, so far as it may be material.

Claim 2 of patent No. 441,962 covers the combination in the old type of saw-set of "a screw arranged at a suitable angle to the horizontal center of the main body of the device and supported by the correspondingly-depending screw-threaded lug arranged on the under side of the device, substantially as shown and described." A screw, practically identical in construction and operation, is shown and described in Effinger patent, No. 399,391, of 1889.

It is agreed that the alleged invention of this claim resides in "the valuable feature of arranging the adjusting screw to a suitable angle." Complainant's expert admits that "there is not much difference" between the function of the screw of the patent in suit and that of the adjustable plate and slot in Charlton patent, No. 302,891, of 1884. Apparently their functions are identical. There was therefore no invention in the mere substitution of the Effinger screw for the Charlton slide.

Patent No. 532,175 covers a combination, one element of which is an automatic lock, claimed in said combination as follows:

"Anvil, h, having the indentations, o, thereon, the latter adapted to engage with corresponding means for locking the anvil in position, pin, i, shield washer, k, pin, l, and spring, m; the whole forming a complete device."

The defendant's device has no indentations, and no means whatever for locking the anvil, automatically, or otherwise. Its anvil is held in position solely by continuous frictional contact. This patent is not infringed.

The two claims of the third patent in suit, No. 703,440, are as follows:

"(1) In a saw-set a rotary concentric anvil having an eccentric bearing-surface and a beveled anvil-face, and a movable setting device having its operative face slightly inclined to the anvil-face, the inclination being toward the perimeter of the anvil as described.

"(2) In a saw-set a rotary concentrically-pivoted anvil having an eccentric bearing-surface and a beveled anvil-face, and a plunger having its axis of movement perpendicular to the opposed portions of the beveled anvil-face, and its operative face arranged at an angle therewith, the inclination being toward the perimeter of the anvil as described."

It was stated on the argument that these claims were practically identical. They will therefore be considered together. "A rotary concentric anvil, having an eccentric bearing-surface, and a beveled anvil-face and a movable setting device," is shown in Taintor patent, No. 452,399, of 1891, and in the second patent in suit, No. 532,175. But as complainant's expert says:

"The prominent features of the construction of patent No. 703,440 are comprised in the tilting of the anvil and the blunting of the operative face of the plunger."

This is accomplished, as stated in the specification, by having the eccentric plane of the anvil "arranged so that the beveled face thereof will be at right angles to the axis of the horizontally-moving plunger."

The patentee further says:

"The axis of the said rotative anvil, f, is arranged oblique to the axis of the plunger, h, in a manner that will bring the beveled face, g, at right angles to the axis of the plunger, h, aforesaid. It will be observed that the inclination of the operative face of the plunger, h, is arranged at an angle to that of the beveled face, g, of the rotative anvil, f. The object of arranging the plunger and rotative anvil in this manner is to enable the plunger to properly engage with the cross-angle extending to the apex of the tooth, and thereby setting the tooth perfect in every respect; a result never heretofore accomplished."

It may be assumed that this arrangement involved invention, in fact, defendant's expert is forced to make an admission to that effect. In the defendant's saw-set the axis of the plunger is so arranged as to be at an acute angle to the beveled face of the anvil, while its plunger face is parallel to the beveled face, and its anvil and plunger axis are practically parallel. Furthermore, defendant's anvil is eccentrically pivoted, and has a concentric bearing-surface and concentric bevel.

Defendant's expert asserts that by reason of these differences of construction its device does not perform the function of the patented device. He asserts that in the latter the plunger or setting device pinches the point of the tooth against the anvil, leaving the base free,

while in defendant's device the plunger first engages the base of the tooth. A comparison of the operation of the two devices establishes the correctness of this assertion. Defendant's expert claims that this difference of operation is material, because the base-engaging construction would tend "to make a sharp bend at the base of the tooth; and in case the saw was soft, to indent the same at that point." But the fact that defendant commercially manufactures and sells sew-sets with this construction indicates that the difference is theoretical rather than practical. If this patent were a primary one, the charge of infringement would not be avoided by these differences in construction and operation. But the Trickett British patent of 1879 showed a saw-set, having a concentrically pivoted anvil with an eccentric bearing-surface "in which the edge is beveled to suit the various angles to which the teeth of saws require to be set, so that by turning it round, in the slot, a, and locking it fast by means of the thumb-nut, e, any required angle is presented opposite to the tooth, d, and upon motion being given to the tooth, d, by the hand through the lever, c, the required set is given to the saw."

And Morrill's prior patent, No. 686,468, showed and claimed "a cylindrical-shaped rotative anvil having a continuous eccentric bevel thereon, the axis of the anvil arranged horizontally oblique to the axis of the said horizontally-moving plunger."

The patentee, Morrill, having already covered by prior patents various minor improvements in saw-sets, apparently thought that some slight advantage might be secured by this slight departure from prior constructions. He is entitled to protection in the result secured by means of these departures, as stated in the specifications and claims quoted above. But he cannot enlarge the scope of these narrowly limited modifications and adjustments of angles and faces, so as to embrace the saw-set which defendant has succeeded in producing without adopting said modifications. The defendant's device differs from the patented device in the particulars pointed out. There is no occasion for the application of the doctrine of equivalents.

The decree is affirmed, with costs.